# VA's Authority to Fill Certain Prescriptions Written by Non-VA Physicians

The Department of Veterans Affairs is authorized to fill prescriptions written by non-VA physicians for veterans placed on VA waiting lists.

July 3, 2003

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF VETERAN AFFAIRS

You have asked us whether the Department of Veterans Affairs ("VA") is barred by statute from generally filling prescriptions written by non-VA physicians for veterans on VA's lengthy waiting list. For the reasons stated below, we conclude that VA is not so barred.

## I.

You have advised us that the number of veterans who have requested care from the VA is greatly in excess of the number that VA can care for at the present time. As a result, the number of veterans who have to wait more than six months before they can receive care in a VA facility has recently been above 200,000 and remains very high. Some of these veterans have received care from non-VA physicians and then sought to obtain the prescription medication benefits included in VA's uniform benefit package. But in light of legal opinions of VA's Office of General Counsel dating back to 1983, VA has generally declined to fill prescriptions written by non-VA physicians. Instead, VA has required veterans with such prescriptions to schedule examinations in the backlogged VA facilities. Such examinations typically involve a months-long wait and impose additional burdens on the VA system.

In 1991, VA's Office of General Counsel reissued as a "Precedent Opinion" an opinion that it had previously issued in 1983. In that opinion, your Office determined that the provision then codified at 38 U.S.C. § 612(h) (1982)—and now revised and codified at 38 U.S.C. § 1712(d) (2000)—was "the exclusive legal authority for providing a veteran with drugs and medicines prescribed by the veteran's private physician, when the VA has no involvement, fee basis or otherwise, in the treatment of the veteran." Vet. Aff. Op. Gen. Couns. Prec. 41-91 (Mar. 11, 1991), 1991 VAOPGCPREC LEXIS 1183, at *14 ("1991 VA Opinion"). In 2002, your Office considered whether intervening changes in the law—particularly, the Veterans' Health Care Eligibility Reform Act of 1996, Pub. L. No. 104-262, 110 Stat. 3177 (1996) ("Eligibility Reform Act")—altered the conclusion of your 1991 opinion and determined that they did not. Your Office reaffirmed its position that "VA does not have legal authority to furnish veterans with medications prescribed by private physicians when VA has no other in-

volvement in the care of the veteran." Vet. Aff. Op. Gen. Couns. Adv. 19-02 (2002) ("2002 VA Opinion").

## II.

Title 38 confers on the VA Secretary broad authority to determine the services provided to veterans. Paragraphs (1) and (2) of section 1710(a) provide that the Secretary "shall furnish" to particular classes of veterans those "medical services" "which the Secretary determines to be needed." 38 U.S.C. § 1710(a)(1), (2) (2000). Paragraph (3) further provides that for any veteran not covered by paragraphs (1) and (2), the Secretary "may . . . furnish . . . medical services . . . which the Secretary determines to be needed." *Id*. § 1710(a)(3). The statutory definition of "medical services" includes, among other things, "medical examination, treatment, and rehabilitative services," 38 U.S.C. § 1701(6) (Supp. I 2002).

We believe that, except insofar as otherwise barred, the Secretary's general statutory authority is plainly broad enough to enable VA to fill prescriptions written by non-VA physicians for veterans who have been placed on VA's waiting list for examinations. First, the filling of prescriptions is, or can reasonably be determined to be, a "medical service" because it constitutes "treatment." Companion provisions in this same statutory scheme recognize that medications are "furnished . . . for the treatment of" disabilities and conditions, 38 U.S.C. § 1722A(a)(1) (2000), and that "such drugs and medicines as may be ordered on prescription of a duly licensed physician" are part of the "treatment of [an] illness or injury," *id*. § 1712(d). Indeed, VA's Office of General Counsel has itself stated that "provision of drugs and medicines is medical treatment." 1991 VA Opinion at *6.[1] Second, the Secretary has discretion to determine "to be needed" the filling of prescriptions written by non-VA physicians for those veterans on VA's waiting list. Such a determination would (in the absence of any other bar) trigger the Secretary's duty under paragraphs (1) and (2) of section 1710(a), and his power under paragraph (3) of that section, to have VA fill the prescriptions. Third, in light of the existing backlog of veterans seeking VA care, a decision by the Secretary to authorize VA to fill prescriptions written by non-VA physicians for those veterans on VA's waiting list would be consistent with the statutory directive that "the Secretary shall, to the extent feasible, design, establish and manage health care programs in such a manner as to promote cost-effective delivery of health care services in the most clinically appropriate setting." 38 U.S.C. § 1706(a) (2000).

Your Office has suggested several possible reasons why this result might not follow. First, invoking the maxim *expressio unius est exclusio alterius*, your Of-

---

[1] Notwithstanding this statement, the 1991 VA Opinion relied on the *absence* of legislative history and the *expressio unius* maxim discussed below to conclude that provision of drugs and medicines ordered by private non-VA physicians is not medical treatment.

fice has read section 1712(d) as providing "the exclusive legal authority for providing a veteran with drugs and medicines prescribed by the veteran's private physician, when the VA has no involvement, fee basis or otherwise, in the treatment of the veteran." 1991 VA Opinion at *6–*7, *14. We do not believe that this is the best reading of section 1712(d). Section 1712(d) provides in part:

> The Secretary shall furnish to each veteran who is receiving additional compensation or allowance under chapter 11 of this title, or increased pension as a veteran of a period of war, by reason of being permanently housebound or in need of regular aid and attendance, such drugs and medicines as may be ordered on prescription of a duly licensed physician as specific therapy in the treatment of any illness or injury suffered by such veteran.

38 U.S.C. § 1712(d). In short, section 1712(d) specifically requires the filling of prescriptions written by private physicians for certain classes of veterans. We note, however, that it does not expressly provide that it sets forth the exclusive circumstances in which the Secretary is required to fill such prescriptions, much less the exclusive circumstances in which the Secretary is allowed to fill such prescriptions. Moreover, given the broad authority that section 1710(a) confers on the Secretary, we do not think that the *expressio unius* canon applies here to require that section 1712(d) be read as somehow implicitly limiting that broad authority.[2]

Second, your Office has pointed to legislative history associated with the Eligibility Reform Act—specifically, to a statement in the committee report of the House bill that was merged with a Senate bill when the Act was passed. In the context of refuting projections by the Congressional Budget Office ("CBO") that provisions of the bill would result in substantial new demand for VA medical services and benefits, the House report stated: "It is critical to note that H.R. 3118, like existing law, would not permit VA simply to serve as a veterans' 'drug store', providing medications, prosthetic devices, or other medical supplies prescribed by a private physician who has no affiliation or contractual relationship with the VA." H.R. Rep. No. 104-690, at 17 (1996). This legislative history might be thought to indicate that Congress did not intend section 1710(a) to authorize the Secretary to provide the prescription services at issue.

We do not find this legislative history probative of the meaning of section 1710(a). Insofar as it might be thought to mean that the Secretary may not provide the prescription services at issue, we do not think that it can be squared with the expansive text of section 1710(a). *See Circuit City Stores, Inc. v. Adams*, 532 U.S.

---

[2] The fact that section 1712(d), unlike section 1710(a), appears to require filling of prescriptions whether or not the Secretary determines the filling of the prescriptions to be necessary further suggests that the obligation imposed under section 1712(d) is not of the same class or type as the obligations and powers under section 1710(a). This would provide an additional reason why the *expressio unius* canon would not apply.

105, 119 (2001) ("As the conclusion we reach today is directed by the text of § 1, we need not assess the legislative history of the exclusion provision."); *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) ("we do not resort to legislative history to cloud a statutory text that is clear"). We note, further, that the statement in the House report is not specifically addressed to section 1710(a) (or to any other provision of the Act) but is instead designed to counter CBO's $3 billion projections of the House bill's costs. *See* H.R. Rep. No. 104-690, at 15, 17, 19. We therefore consider it especially suspect. In any event, the prescription authorization at issue here does not fit the "drug store" analogy. The prescription services at issue here would be authorized only for "waiting list" veterans and only for drugs "which the Secretary determines to be needed," not for any veteran who wanted to fill a prescription.

Third, the 2002 opinion argues that the provision of law stating that the "primary function of the [Veterans Health] Administration is to provide a complete medical and hospital service for the medical care and treatment of veterans," 38 U.S.C. § 7301(b) (2000), "has historically been interpreted to mean that Congress intended VA to furnish services needed to treat an eligible veteran through VA facilities and personnel." 2002 VA Opinion ¶ 8. Because VA would be providing the "medical service" at issue—i.e., filling the prescriptions—through VA facilities and personnel, we do not see how this argument has any bearing here.

Finally, your Office has suggested that it would be anomalous for the Secretary to be required to charge a copayment amount for medication furnished the veteran "on an outpatient basis for the treatment of a non-service-connected disability or condition," 38 U.S.C. § 1722A(a)(1), but not to be required to be charged a copayment for medication prescribed by a non-VA physician for such a disability or condition. But any such anomaly vanishes if, as seems to us permissible,[3] the Secretary may regard the VA's filling of a prescription issued by a non-VA physician to be service "on an outpatient basis" for which a copayment would be required under section 1722A(a)(1). In any event, even if that anomaly were to remain, we would not see it as providing a sufficient basis for overriding our reading of section 1710(a).

M. EDWARD WHELAN III
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[3] The VA regulations appear to contemplate only two broad categories of care or service: "inpatient hospital care" and "outpatient medical care." *See* 38 C.F.R. § 17.108(a)–(c). Since VA clearly would not be furnishing the prescriptions in question on an "inpatient" basis, it is reasonable to conclude that they are furnished on an "outpatient" basis.